Kenneth KUJANEK, Plaintiff,

v.

**HOUSTON POLY BAG I, LTD.,**
**Benefit Administrators,**
**Defendants.**

Civil Action No. H–09–0349.

United States District Court,
S.D. Texas,
Houston Division.

Aug. 31, 2010.

---

John Bruster Loyd, Kathleen A. O'Connor, Jones Gillaspia Loyd LLP, Houston, TX, for Plaintiff.

Gary M. Polland, Gary M. Polland P.C., Houston, TX, George William Vie, III, Mills Shirley LLP, Galveston, TX, for Defendants.

Order

LYNN N. HUGHES, District Judge.

On August 13, 2010, Magistrate Judge Stephen Wm. Smith, issued an amended memorandum and recommendation (68). Houston Poly Bag I, Ltd. objected (69). The memorandum and recommendation is adopted as this court's order.

### AMENDED MEMORANDUM, RECOMMENDATION, AND ORDER

STEPHEN WM. SMITH, United States Magistrate Judge.

This ERISA[1] dispute is before the court on plaintiff Kenneth Kujanek's motion for summary judgment.[2] The court heard oral argument on March 12, 2010, and two rounds of supplemental briefs were filed. The court issued a memorandum and recommendation in this case on June 2, 2010 (Dkt. 60). Defendant Houston Poly Bag filed objections (Dkt. 65), and Plaintiff Kujanek filed a proposed final judgment as ordered (Dkt. 62), and a motion for attorney fees (Dkt. 63). In light of these filings, the original memorandum and recommendation is withdrawn, and this amended memorandum and recommendation is submitted in its place.

Kujanek asserts three claims against his former employer, Houston Poly Bag I, LTD. (Houston Poly Bag), and its third-party administrator, Pension Benefit Administrators (PBA): (1) wrongful denial of a contribution to his profit sharing account for the year of his resignation; (2) breach of fiduciary duty by denying access to his profit sharing account for 18 months after his resignation, during which time his account lost over $180,000 in value; and (3) failure to timely furnish plan documents in response to a written request, thereby incurring statutory penalties under ERISA.

The court recommends that plaintiff's motion be GRANTED as to claims 2 and 3 against defendant Houston Poly Bag, but DENIED in all other respects. The court further recommends dismissal of claim 1 with prejudice, and entry of final judgment awarding plaintiff monetary relief and penalties, as well as costs and attorneys fees.

### Background[3]

Kenneth Kujanek worked for Houston Poly Bag for 17 years until his resignation in September 2007. By that time, he had accumulated significant vested benefits in an ERISA profit sharing plan administered by Houston Poly Bag and its third party administrator, PBA. Houston Poly Bag is a family-owned Texas limited partnership. William E. (Wes) Sumner III is the manager of the general partner of Houston Poly Bag; he and his two sisters are limited partners. Sumner and his father are also trustees of the profit sharing plan.[4]

Under the terms of the plan, Kujanek was entitled to elect a "rollover" distribution of vested benefits "as soon as administratively feasible" after the end of the plan year in which he terminated employment.[5] The amount of the distribution would be determined by the value of the account at

---

1. Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*

2. Dkt. 39. Defendants have not moved for summary judgment.

3. For purposes of this motion, the following facts are undisputed unless otherwise indicated.

4. Sumner Dep., plaintiff's ex. F (Dkt. 39–7), at 4–5.

5. Summary Plan Description (SPD), plaintiff's ex. H (Dkt. 39–9), at 6.

the end of the plan year in which the participant last worked.[6] As plan administrator, Houston Poly Bag imposed a rule that terminated employees were required to wait at least one year before they could obtain such a rollover.[7]

The parties dispute[8] whether general manager Wes Sumner advised Kujanek of this rule in September 2007 when they met to discuss Kujanek's resignation.[9] This particular dispute is not material, because it is uncontroverted that Kujanek was "well aware" of the one year rule,[10] and that on his last day of employment he was told by "the ladies in the office" that he would have to wait a year for rollover information and forms.[11] It was the company's routine practice to give this response to departing employees who inquired about a rollover distribution.[12]

Two months after his resignation, in November 2007, Houston Poly Bag sued Kujanek in state court alleging breach of employment contract, breach of fiduciary duty, and tortious interference with business relations. On April 28, 2008, Kujanek, through his attorney, served the following requests for production upon counsel for Houston Poly Bag:

1. Provide copies of any and all documents describing the terms and conditions required for contribution by Houston Poly Bag I to any employee profit sharing plan.

2. Provide copies of any and all documents describing the eligibility requirements for employees to receive benefits from any employer sponsored profit sharing plan.[13]

Houston Poly Bag objected on relevancy grounds and refused to provide the relevant plan documents.[14]

Kujanek repeatedly contacted Thomas Ross III, the broker for the profit sharing plan, in an effort to obtain plan documents and rollover information. Ross admitted that Kujanek spoke to him "half a dozen" times about this subject.[15] In September 2008, Kujanek asked Ross to contact the company for him and request his rollover distribution.[16] Ross spoke to Sumner about this request, and Sumner instructed Ross to tell Kujanek to contact him (Sumner) directly.[17] At some unspecified later date,[18] Ross obtained a copy of the sum-

---

6. Sumner Dep., at 80–81.

7. Sumner Dep., at 30–31 and corrections.

8. *Compare* plaintiff's ex. B, Kujanek aff. (Dkt. 39–3), ¶ 4 *with* defendants' ex. B, Sumner aff. (Dkt. 49–3), at 2.

9. Sumner requested Kujanek's resignation ostensibly because Kujanek had a second job in competition with the company. Sumner aff., at 1. Kujanek claimed that he was not contractually precluded from other jobs. Kujanek aff., ¶ 3.

10. Sumner aff., at 2.

11. Kujanek aff., ¶ 12.

12. Sumner Dep., at 30.

13. Defendants' ex. O (Dkt. 49–16).

14. *Id.* That case was ultimately tried to a jury, and a take nothing judgment was entered in favor of Kujanek on Houston Poly Bag's claims. Dkt. 55, at 1.

15. Plaintiff's ex. E, Ross Dep. (Dkt. 39–6), at 19.

16. Ross. Dep., at 19 (as corrected).

17. Sumner Dep., at 47; Sumner aff., at 2.

18. Defense counsel first declared that Ross provided Kujanek the SPD in November 2008 (Dkt. 49, at 4), but later advanced the date to October 2008 (Dkt. 52, at 4). These statements are at variance not only with each other but also with the record. Ross's affidavit (defendants' ex. A, Dkt., 49–2) does not mention either date, and his deposition testimony, while vague, points to a later date. Ross Dep., at 38 ("I don't know when I gave

mary plan description and personally handed it to Kujanek.

On November 14, 2008, Kujanek, through his counsel, sent a demand letter to the plan administrator seeking a profit sharing contribution to Kujanek's profit sharing plan for the 2007 plan year.[19] The letter also requested a copy of the plan's annual report for the previous plan year. The company responded by email on November 25, 2008, denying the claim and attaching two pages of plan documents referencing the year-end eligibility requirement.[20]

On February 6, 2009, Kujanek filed this suit against Houston Poly Bag and Pension Benefit Administrators, alleging improper denial of access to his profit sharing funds and documentation in violation of ERISA. Nearly three weeks later, on February 26, PBA wrote to Kujanek's counsel responding to the complaint and enclosing a complete set of plan documents.[21] The letter explained that if Kujanek wanted to obtain his plan benefits, he should request a distribution forms package from the Plan Administrator, William E. Sumner, Jr. The letter further advised that the distribution amount "will be based on his account balance *as of December 31, 2008, the most recent anniversary date.*" [22]

On March 19, 2009, Kujanek executed the election form [23] and submitted it to the plan administrator. The following month,[24] Kujanek received a rollover distribution of approximately $306,000, the account balance at year-end 2008. This represented a drop in value of over $180,000 from the previous year.[25] Kujanek subsequently amended his complaint to include a breach of fiduciary duty claim to recover the diminished value of his rollover distribution.[26]

### Summary Judgment Standards

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

---

[the SPD]—probably earlier this year [2009] or the end of last year.").

19. Defendants' ex. E (Dkt. 49–6). In April 2008, Kujanek had received a summary allocation report reflecting an account balance of $490,198.78 as of 12/31/07. No contribution had been made for 2007. Defendants' ex. Q (Dkt. 52–1).

20. Plaintiff's ex. C (Dkt. 39–4).

21. Defendants' ex. F (Dkt. 49–7). Kujanek's counsel also wrote a letter to Houston Poly Bag on April 1, 2009 repeating the request for a complete set of plan documents. Plaintiff's ex. D (Dkt. 39–5). The record does not show whether Houston Poly Bag provided any additional plan documents not already produced by PBA.

22. Defendants' ex. F (Dkt. 49–7, at 2) (emphasis added).

23. Defendants' ex. N (Dkt. 49–15). Apparently the form was provided in response to a letter request from Kujanek's counsel on March 13, 2009 (Sumner aff., at 2), although neither the letter nor the response is in the record.

24. Kujanek's affidavit states that he received the distribution on April 1, 2009 (Kujanek aff., ¶ 10), but defendants' exhibit I (Dkt. 49–10) reflects a payout date of April 11, 2009. This discrepancy is immaterial.

25. The court's initial memorandum and recommendation stated that Kujanek received approximately $300,000, a drop of over $190,000 from the previous year-end balance, citing Kujanek aff., ¶ 10. In his proposed judgment, Kujanek put the value at $183,881.88. The lower figure is consistent with defendants' summary judgment response (Dkt. 49, at 7), and the court adopts it here.

26. Plaintiff's Third Amended Original Complaint (Dkt. 20). The alleged fiduciary breach consists of improperly withholding plan documents and forms; there is no claim of imprudent investment.

The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel,* 274 F.3d 984, 991 (5th Cir.2001). Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party. *In re Segerstrom,* 247 F.3d 218, 223 (5th Cir.2001). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir.2002).

### Analysis

Kujanek contends that defendants violated ERISA in three distinct ways: (1) denial of his profit sharing allocation for 2007, the year of his resignation; (2) denial of access to rollover distribution forms and thereby to his profit sharing account, resulting in a significant account loss; and (3) failure to timely furnish plan documents in response to his written request, thereby triggering ERISA's penalty provisions. Each is considered in turn.

### 1. Denial of 2007 Profit Sharing Allocation

█ Kujanek pursues this claim under ERISA § 502(a)(1)(B). That provision allows a plan participant "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). He argues that Houston Poly Bag violated the plan terms by failing to make an allocation to his profit sharing account for 2007.

Houston Poly Bag responds that Kujanek was not eligible for a 2007 allocation because he was not actively employed at the end of that year, having resigned in September. According to the relevant plan document, a participant not actively employed at the end of the plan year would not be entitled to an allocation for that year except in cases of death, early or normal retirement, or total and permanent disability.[27]

At oral argument, Kujanek contended that the plan document in evidence had been amended in 2008, and disputed whether this eligibility requirement had been in effect prior to that date. Defendants responded that the 2008 amendment had nothing to do with eligibility requirements, and have since provided a copy of the previous version of the plan, which verifies their position.[28]

According to the plan in effect when he resigned, Kujanek was not eligible for a 2007 contribution, and so he is not entitled to summary judgment on this issue. Although the defendants have not moved for summary judgment, the material facts are undisputed, so the court recommends that defendants be granted judgment as a matter of law on the 2007 profit sharing allocation claim.[29]

### 2. Denial of Access to Profit Sharing Account

Kujanek brings this breach of fiduciary duty claim under ERISA § 502(a)(2).[30] This section provides a remedy for fiduciary breaches resulting in harm to plan assets as a whole, or to the assets in a participant's separate account in a defined

---

**27.** Defendants' ex. H (Dkt. 49–9), at 10.

**28.** Defendants' ex. R (Dkt. 52–2).

**29.** No party objected to this recommendation in the original memorandum and order entered June 2, 2010, and Kujanek agrees to dismissal of this claim (Dkt. 61).

**30.** 29 U.S.C. § 1132(a)(2).

contribution plan. *See LaRue v. DeWolff, Boberg & Assoc., Inc.,* 552 U.S. 248, 128 S.Ct. 1020, 169 L.Ed.2d 847 (2008). Kujanek asserts that Houston Poly Bag breached its fiduciary duty of loyalty to him as a plan participant by denying him access to his profit sharing account until 18 months after his resignation, thereby resulting in a substantial loss to that account.

In addition to specific disclosure and reporting obligations, ERISA trustees and plan administrators are subject to fiduciary duties. *Martinez v. Schlumberger, Ltd.,* 338 F.3d 407, 411 (5th Cir.2003) ("ERISA incorporates strict standards of trustee conduct, derived from the common law of trusts, including a standard of loyalty and a standard of care."). Section 404(a)(1) requires plan trustees and administrators to discharge their duties "solely in the interests of the participants and beneficiaries and ... for the exclusive purpose of providing benefits to participants and their beneficiaries ...." 29 U.S.C. § 1104(a)(1). The Supreme Court has explained that "rather than explicitly enumerating *all* of the powers and duties of trustees and other fiduciaries, Congress invoked the common law of trusts to define the general scope of their authority and responsibility." *Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.,* 472 U.S. 559, 570, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985) (emphasis in original). Under common law trust principles, a trustee has an unyielding duty of loyalty to beneficiaries. *See Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 152–53, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985) (Brennan, J., concurring) ("Congress intended by § 404(a) to incorporate the fiduciary standards of trust law into ERISA, and it is black-letter trust law that fiduciaries owe strict duties running directly to beneficiaries in the administration and payment of trust benefits.").

■ *Fiduciary breach.* Kujanek contends that Houston Poly Bag's 18–month delay in giving him access to his profit sharing account breached its fiduciary duty of loyalty under ERISA. The court agrees. In *Blatt v. Marshall and Lassman,* 812 F.2d 810 (2d Cir.1987), the Second Circuit reached the same conclusion on nearly identical facts. Blatt had requested a lump sum distribution of his vested retirement account upon resigning his position at an accounting firm. He was advised by the third party administrator that his former employer would first have to execute and deliver a "notice of change" form verifying Blatt's departure. Despite repeated requests by Blatt and his attorney, the firm never sent in the form; according to Blatt, the firm was seeking leverage over him in an unrelated state court suit they filed shortly after Blatt left. Finally, Blatt filed suit for fiduciary breach under ERISA, and the firm delivered the executed form a few weeks later, more than 18 months after Blatt's resignation.

Finding that the firm's delay in providing the necessary change form prevented Blatt's receipt of benefits to which he was entitled, the Second Circuit concluded:

> Marshall and Lassman breached their fiduciary duty to Blatt by failing to deliver the Notice of Change form to [the plan administrator] until more than one and one-half years after Blatt left the firm. Appellees unreasonable delay in performing such a simple function was decidedly not "solely in the interest of [Blatt]," nor did it serve "the exclusive purpose of providing benefits to [Blatt]." 29 U.S.C. § 1104(a)(1)(A)(i).

812 F.2d at 813.

Like Blatt, Kujanek was denied access to his retirement account for 18 months because his former employer ignored repeated requests for a necessary form. Likewise, Houston Poly Bag's unreason-

able delay in performing the simple function of sending Kujanek a rollover form was emphatically not "solely" in Kujanek's interest, nor did it serve the "exclusive" purpose of providing benefits to him. In light of *Blatt,* it must be concluded that Houston Poly Bag breached its fiduciary duty to Kujanek by blocking access to his vested profit sharing account in this way.

***Firestone distinguished.*** Houston Poly Bag objects to this conclusion on grounds that it violates the *Firestone*[31] deferential standard for judicial review of a trustee's exercise of discretionary powers. But *Firestone* was not a breach of fiduciary duty case; it was a claim for severance pay benefits brought under ERISA § 502(a)(1)(B), which allows a participant to recover benefits due under the terms of a benefit plan. Kujanek is not bringing such a claim, nor could he do so; Houston Poly Bag distributed to him the full value of his profit sharing account *at the time his rollover form was submitted.* So Kujanek is not complaining about a trustee's exercise of discretionary power to interpret plan language. Instead, Kujanek asserts that Houston Ploy Bag breached its non-discretionary fiduciary duty of loyalty to him by denying him the means (*i.e.,* the forms) to submit his rollover request during the preceding plan year. Such a claim is properly brought under ERISA

§ 502(a)(2), which authorizes relief for such a fiduciary breach. *See LaRue v. DeWolff, Boberg & Assoc.,* 552 U.S. 248, 128 S.Ct. 1020, 169 L.Ed.2d 847 (2008). The court is aware of no cases applying *Firestone* deference as a defense to such a fiduciary breach claim.[32]

Moreover, contrary to Houston Poly Bag's assertion, the fiduciary breach asserted here is not a matter of plan interpretation. The so-called "one year rule" for distributions to terminated employees—invoked by Houston Poly Bag in place of the "as soon as administratively feasible" language in the SPD[33]—says nothing about providing rollover forms. It would have been perfectly consistent with the one year distribution rule to give Kujanek a copy of the form on the day he resigned in September 2007. And even if the rule had applied to both the forms as well as the distributions, *it was not followed here.* Kujanek finally received the form 18 months—not one year—after he left. The additional six month period was critical, because it encompassed the 2008 year-end valuation which resulted in the $180,000 account loss. Had the one year rule been followed, this lawsuit would not have ensued, because in September 2008 Kujanek would have received the previous (2007) year-end account balance of approximately $490,000.[34]

---

**31.** *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

**32.** *See LaRue,* 552 U.S. at 258–59, 128 S.Ct. 1020 (Roberts, C.J., concurring in part and concurring in judgment) (suggesting that "safeguards" for plan administrators developed under § 502(a)(1)(B), such as *Firestone* deference, are not available under § 502(a)(2)). Even if such a defense were theoretically available under trust law, its applicability to ERISA fiduciary breach claims might well be precluded by ERISA § 410(a), which forbids the trust or other plan document from "reliev[ing] a fiduciary from re-

sponsibility or liability." 29 U.S.C. § 1110(a). *See IT Corp. v. General American Life Ins. Co.,* 107 F.3d 1415, 1418 (9th Cir. 1997) ("[A] contract exonerating an ERISA fiduciary from fiduciary responsibilities is void as a matter of law.").

**33.** Dkt. 39–9, at 6 ("You may elect to have your vested benefit distributed to you as soon as administratively feasible after the end of the Plan Year in which you terminate.").

**34.** The one year distribution rule appears to be a dubious construction of the SPD language in any event, and might not survive

*No written request required.* Houston Poly Bag also contends that Kujanek's repeated requests for rollover forms were properly ignored because they were not made in writing, as the Plan allegedly requires.[35] Actually, the Plan provision in question, Section 2.10 entitled "Claims Procedure," deals with "claims for benefits under the Plan," not requests for plan forms.[36] Even as to such benefit claims, the Plan merely provides that "claims for benefits under the Plan *may* be filed in writing with the Administrator."[37] This language is plainly permissive, not mandatory.

More importantly, a rollover form is not a distribution check, so a request for the former ought not be confused with one for the latter. Nothing in the Plan states or implies that only written requests for rollover forms would be considered. To the contrary, the Plan imposes an affirmative duty on the Plan Administrator "to assist Participants regarding their rights, benefits, or **elections** available under the Plan."[38] Ignoring less formal requests, such as Kujanek's repeated requests to the Plan's broker, hardly comports with the administrator's duty to assist participants regarding their election of a rollover distribution of their profit sharing account.

The testimony of the Plan Administrator further undermines any claim that the Plan prohibited distribution of claim forms absent a written request:

Q. And, in fact, when an employee leaves Houston Poly Bag, they're not given any information about their rollover plan, are they, in writing?

A. Freely given, no.[39]

. . .

Q. Is there any reason Houston Poly Bag can't give an employee the form for their rollover information just as they do their COBRA information?

A. I find it burdensome to hand out that many papers at the end when we tell them that we'll get the form to them, that they need to come back in about a year's time.[40]

Q. So it's just a burden, that's the reason?

A. No.

Q. Okay. Well, tell me all the reasons you can't give someone one form when they leave regarding their profit sharing rollover?

A. I could.

Q. But you choose not to because it's a burden?

A. No, I don't—it's not a burden.[41]

scrutiny even under a deferential *Firestone* review. Nevertheless, the court expressly reserves any opinion on those questions.

35. *See, e.g.,* Dkt. 49, at 11, 12.

36. Plan, § 2.10 (Dkt. 30–1).

37. *Id.* The Summary Plan Description substitutes the word "should" for "may," but this difference in wording is inconsequential. The Plan provides that discrepancies between the SPD and the Plan must be resolved in favor of the Plan. *See* SPD, plaintiff's ex. H (Dkt. 39–9), at 1.

38. Plan, § 2.4(k) (Dkt. 30–1) (emphasis added).

39. *Id.,* at 50.

40. *Id.,* at 51–52; correction of 52, line 6 ("We are not required by the Plan to provide any documents upon separation from employment with Houston Poly Bag (see operational duties of Plan Administrator. All distribution election forms are void after six months.")).

41. *Id.,* at 52 (objections omitted and overruled).

. . .

Q. But there is a form you require people to fill out, isn't there?

A. Yes.

Q. Is there some reason you can't give that form to an employee when they leave so that they have it to fill out and return?

A. No.

Q. Is there any handout that you give an employee that says this is what you need to do to get your rollover?

A. No.[42]

This grudging "assistance" to plan participants was reflected in other testimony. When asked whether any employees were provided with copies of the SPD during their employment with Houston Poly Bag, Sumner testified, "Not that I know of." [43] Although he did testify that employees might be provided a copy of the "prototype plan" if they asked for it, he admitted that there was no posting in any company lunchroom or workroom advising employees that such documents were available.[44]

Sumner's policy against "freely given" rollover information was faithfully executed in Kujanek's case. When Kujanek requested rollover forms and information in September 2007, he was advised by office personnel that he would have to wait a year.[45] In September 2008, Kujanek repeatedly sought rollover forms through Tom Ross, the Plan's broker. Although Sumner admitted that Ross had informed him of Kujanek's request at that time, he ignored it because Kujanek had not contacted him directly.[46] As we have seen, nothing in the Plan places any restrictions on how rollover forms could be requested, and Ross was a logical point of contact because he was responsible under the Plan for making distributions as directed by the trustee.[47] Any trustee mindful of his duty to act "solely in the interest" of plan participants and "for the exclusive purpose" of providing benefits to them would have promptly mailed the three page rollover

---

**42.** *Id.,* at 53.

**43.** Sumner Dep., at 37.

**44.** *Id.* Houston Poly Bag claims that the one report it did provide to participants, the summary annual allocation report, provides "thorough information on the proper procedure to receive plan information, as well as how to request a distribution," but that is just a falsehood. Careful review of the Summary Annual Report for the plan year ending December 31, 2007 (Dkt. 52–1) reveals no mention whatever of a participant's rollover distribution rights, or how to request a distribution. Nor does it advise the participant on the proper procedure for requesting plan documents. It does contain a section headed "Your Right to Additional Information," but that additional information is limited to "the full Annual Report, or any part thereof," as well as a list of "the Plan's assets and liabilities, including a statement of income and expenses" and "evidence of the required Fidelity Bond and the information received from the financial institutions." Any plan participant seeking to learn how to obtain plan documents such as the SPD, or how to request a distribution, or where to obtain rollover forms, or how to file a claim, would be left completely in the dark by this report. Houston Poly Bag's repeated statements to the contrary in its briefs and at oral argument (Dkt. 49, at 7, 13; Dkt. 52, at 8; Mar. 12, 2010 oral argument, at 10:44 a.m.) are dishonest and misleading.

**45.** Kujanek aff., ¶ 12.

**46.** Kujanek did not approach Sumner directly in 2008. At that time, Houston Poly Bag was pursuing its lawsuit against Kujanek in state court. Moreover, Kujanek asserts that he had already asked Sumner about a rollover distribution in September 2007, to no avail.

**47.** Defendants' ex. A (Dkt. 49–2). Ross was also Kujanek's personal broker. Kujanek aff., ¶ 7.

election form[48] upon learning of Kujanek's request.

ERISA plan documents and forms are key to safeguarding employee pension rights. They must not be hoarded like family jewels, nor rationed like war-time gasoline. By waiting until March 2009—18 months after his resignation and one month after this lawsuit was filed—to provide the forms necessary for Kujanek to access his vested retirement funds, Houston Poly Bag breached its fiduciary duty of loyalty to him as a plan participant.

***Remedy.*** The remedy for such a breach is straightforward. The Supreme Court in *LaRue* made clear that when a fiduciary breach diminishes plan assets payable to persons tied to particular individual accounts, ERISA § 502(a)(2) follows the common law of trusts to allow recovery for the decline in value of those assets. 552 U.S. at 253 n. 4, 128 S.Ct. 1020, citing 1 *Restatement (Second) Trusts* § 205, and comment i, § 211 (1957). In this case, the loss to Kujanek's profit sharing account due to the 18–month delay is readily measured by the Plan itself, which updates the value of each profit sharing account only once a year. In 2008, the annual summary allocation report showed $ 490,198.78 in Kujanek's account; he received a payout of approximately $306,000 based on the 2009 annual summary allocation report. Houston Poly Bag's breach effectively denied Kujanek access to his account in 2008, when he would have received the larger amount. He is entitled to recover the difference between that amount and the lesser amount he ultimately received in 2009.

Houston Poly Bag wrongly objects that such a remedy is unfair because it is based on fluctuations in the stock market over time.[49] But the risk of market fluctuation is built into the Plan by its own terms. Houston Poly Bag chose to value the Plan only once a year, rather than quarterly, monthly or daily.[50] The SPD provides that the vested benefit will be distributed "as soon as administratively feasible after the end of the Plan Year in which you terminate."[51] The plan is valued at year-end, after profit allocations are made and the amount in each account is determined. This accounting process normally takes a few months, and so it is normally "administratively feasible" to make the distribution in March or April.[52] Thus, by its own terms the Plan incurs the risk of a market downturn during the built-in administrative delay between valuation and distribution dates. Such a delay inevitably risks a windfall to the participant if the market declines. By the same token, in a rising market the windfall will be in the other direction, to the detriment of the participant. And by following an inflexible one-year rule, instead of the "as soon as administratively feasible" period prescribed by the Plan, Houston Poly Bag magnifies the risk that market fluctuations will produce such windfalls.[53] That being so,

---

48. Defendants' ex. N (Dkt. 49–15).

49. Based on counsel's argument, the court presumes that trust assets were invested in the stock market, although nothing in the record actually describes the trust's investment portfolio.

50. Adoption Agreement for PBA Non-standardized Profit Sharing Plan and Trust, defendants' ex. H (Dkt. 49–9), at 2, item 8.

51. SPD, plaintiff's ex. H (Dkt. 39–9), at 6.

52. Sumner Dep. at 35. Defendant notes that it is possible the date could be as late as May, June or even September, but for both plan years relevant to this case (2007 and 2008) the account valuations were completed by the following April. Defendants' ex. T (Dkt. 52–4); ex. I (Dkt. 49–10). At 3.

53. For example, under the one year rule an employee terminated in December would have to wait nearly 12 months after the valuation date to receive his distribution check.

Houston Poly Bag will not be heard to complain about a make-whole remedy covering the losses in Kujanek's account due to market fluctuation over time.

Finally, Houston Poly Bag suggests that Kujanek "likely invested his rollover, and the investment has risen with the market," thereby rendering the damage figure "inaccurate" by the time of judgment. This argument is both speculative and misguided. Nothing in the record shows what Kujanek did with the money he received in March 2009, and so there is no basis to draw any such inference. More importantly, what Kujanek subsequently did with the money he was actually paid, or might have done with the money he was not paid at the time, is entirely irrelevant. Perhaps he would have gone to Las Vegas and hit a multi-million dollar jackpot; or invested in a Wall Street derivative scam and lost it all; or paid off school loans and credit card debt; or, maybe, just tucked it under his mattress at home. By denying Kujanek access to his account in 2008, Houston Poly Bag deprived him of those choices, at least up to the amount of the resulting shortfall.

Kujanek is entitled to be made whole under ERISA § 502(a)(2) for the losses to his account caused by Houston Poly Bag's breach of fiduciary duty. It is recommended that judgment be entered against Houston Poly Bag for the difference between the value of Kujanek's profit sharing account had it been distributed in 2008, and the actual amount distributed to him in 2009, or $183.881.88.[54]

### 3. Failure to Furnish Plan Documents Upon Written Request

In addition to fiduciary disclosure standards based on trust law, ERISA imposes specific reporting and disclosure rules under Title I, Part 1 of the Act. *See* 29 U.S.C. §§ 1021–1025. One of those rules, ERISA § 104(b)(4), provides:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

29 U.S.C. § 1024(b)(4). This provision is enforced by ERISA § 502(c)(1), which imposes a statutory penalty of up to $110 a day upon an administrator who fails to mail the requested information within 30 days.[55] Assessment of the penalty (and its amount) is entirely within the discretion of the court. *See* 29 U.S.C. § 1132(c)(1).

■ *Kujanek's written discovery request.* Kujanek made a written request for plan documents to Houston Poly Bag on April 28, 2008, as part of discovery in their state court litigation. Specifically, he requested all documents describing profit sharing plan contribution and eligibility requirements. The request was made by counsel for Kujanek to counsel for Houston Poly Bag, which is specifically designated "Plan Administrator" for the profit

---

**54.** Kujanek is also entitled to prejudgment interest on this amount at the rate of 5% from February 6, 2009 to the date of entry of final judgment, and postjudgment interest at the federal rate applicable on the date of entry of final judgment from that date until satisfied in full.

**55.** Although the stated penalty in § 502(c)(1) is "up to $100 a day," the civil monetary penalties under Title I of ERISA were increased to $110 a day by the Federal Civil Penalties Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996 (Pub.L. No. 104–134, 110 Stat. 1321–73). *See also* 62 Fed. Reg. 40,695 (July 29, 1997).

sharing plan.[56] Houston Poly Bag objected to the request on relevancy grounds, and did not provide the requested information within the statutory 30 day period. Some documentation was eventually provided six months later, on November 25, 2008, when Sumner wrote the following to Kujanek's attorney:

Dear Mr. Loyd,

Please find attached a letter from Pension Benefit Administrators, our plan administrator and the adoption agreement concerning contributions. Per our plan agreement, Mr. Kujanek is not entitled to a 2007 contribution. Best Regards,

William E. Sumner, Jr.[57]

Attached to the letter were two pages of plan documents related to the year-end active employment requirement. A complete set of plan documents was eventually provided to Kujanek by PBA on February 26, 2009, three weeks after this suit was filed.

Defendants argue that the statutory duty to provide plan information was not triggered by Kujanek's state court discovery requests. They rely upon a Seventh Circuit decision, *Verkuilen v. South Shore Bldg. and Mortgage Co.*, 122 F.3d 410 (7th Cir.1997), as well as a district court opinion from the Western District of Texas expressly following *Verkuilen's* lead, *Galvan v. SBC Pension Benefit Plan*, Civil Action No. SA–04–CV–333–XR, 2007 WL 3118301 (W.D.Tex.2007). Both opinions were authored by distinguished jurists worthy of great respect. However, neither case is factually on all fours with this case; even if they were, neither opinion offers a persuasive rationale for a discovery exemption to ERISA's disclosure requirements.

The issue in *Verkuilen* was whether an interrogatory seeking the plaintiff's account balance in her profit sharing plan qualified as a written request to a plan administrator for purposes of ERISA § 105(a). Writing for the court, Judge Easterbrook held that ERISA's penalty and disclosure rules do not apply to such formal discovery requests:

ERISA and the Rules of Civil Procedure call for different kinds of responses, at different times, to different people . . . . An interrogatory under Fed. R. Civ. P. 33 is a lawyer-to-lawyer device, rather than a participant-to-administrator device. Delay in answering an interrogatory has its own consequences, . . . . See Fed. R. Civ. P. 37. Rule 33(b)(3) gives 30 days as the norm for answers, but the court may vary this time; can it be that any request for extra time to answer interrogatories in an ERISA case places the employer in violation of ERISA? That statute may be comprehensive, but it does not take over the field of civil litigation and oust rules adopted under the Rules Enabling Act.

Instead of forcing the defendant to guess whether to use the approach of ERISA or the Federal Rules of Civil Procedure in response to litigation documents, participants should do what ERISA contemplates: send a simple written request to the plan administrator . . . Nothing but confusion could come from treating complaints and interrogatories as ERISA demands, and replacing Rules 11 and 37 with the penalty provisions of § 1132(c).

122 F.3d at 411–12 (some citations omitted).

Unlike the case at bar, neither *Verkuilen* nor *Galvan* involved state court discovery requests, and *Verkuilen* dealt with an

---

**56.** SPD (Dkt. 39–9), at 18.

**57.** Defendants' ex. P (Dkt. 49–17).

interrogatory rather than a request for production. But these factual differences do not really undercut the rationale of those decisions; as *Galvan* notes, the Seventh Circuit's reasoning applies to document requests as well as interrogatories. 2007 WL 3118301 at *2 n. 5.

That reasoning rests on a false dichotomy—that a written request for plan information must be governed *either* by ERISA or the Rules of Civil Procedure, but never *both*. The Seventh Circuit says the plaintiff would have ERISA "take over the field of civil litigation" and "oust" federal discovery rules, "replacing Rules 11 and 37 with the penalty provisions of § 1132(c)." These dire consequences need not occur if both sets of rules apply concurrently, yet the opinion does not address this possibility.

As a general matter, *Verkuilen* is correct that ERISA and the rules of civil procedure "call for different kinds of responses, at different times, to different people" and with different sanctions. But this merely elides the difficulty presented by the unusual case, such as this, where a litigation request for documents calls for exactly the same kind of information, within exactly the same time, to exactly the same people,[58] as ERISA contemplates.

Both opinions fret about "forcing the defendant to guess whether to use the approach of ERISA or the Federal Rules of Civil Procedure in response to litigation documents," but neither explains why the defendant is required (or permitted) to make that choice. If the request is in proper form to trigger a response under both sets of rules, why shouldn't a defendant/plan administrator comply with both? This is hardly a situation where dual compliance is impossible or even problematic. If the administrator produces the plan doc-

uments, it kills two birds with one stone. If it refuses to do so, then that refusal is measured separately against each set of rules: a refusal based on a proper objection under Rule 34 will bring no discovery sanction; a refusal justified under ERISA will bring no penalty. If both rules were violated, the administrator is answerable to both. The danger of conflicting sanctions is almost nil; a district court has just as much discretion in assessing ERISA penalties as it does in imposing discovery sanctions. *See, e.g., Abraham v. Exxon Corp.,* 85 F.3d 1126, 1132 (5th Cir.1996). So long as the court plainly delineates which sanction applies to which violation (as is routinely done in criminal sentencing, for example), no confusion can result.

Properly framed, the issue here is a matter of statutory interpretation: Does the term "written request" in ERISA § 104(b) (4) encompass a written request for documents in discovery? The statutory text, ordinarily the starting point for interpretation, gives no hint of a limitation on the form of the request, other than it be "written." That requirement sets only a floor to exclude informal oral requests, which are more likely to generate disputes. *Verkuilen* and *Galvan,* on the other hand, would erect a ceiling to exclude requests perceived as *too* formal, merely because they are exchanged between counsel with certificates of service and other accouterments of the discovery rules. But no ERISA text or legislative history is offered to justify limiting its disclosure rules to "simple" written requests between non-lawyers.

It is true that Congress envisaged the federal courts as developing a "federal common law" of ERISA. *See Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107

---

**58.** ERISA case law recognizes that attorneys may make requests on behalf of plan partici-

pants. *See, e.g., Daniels v. Thomas & Betts Corp.,* 263 F.3d 66, 77–78 (3d Cir.2001).

S.Ct. 1549, 95 L.Ed.2d 39 (1987). At the same time, this charge does not give courts license to pencil in their own exceptions (however well-crafted) that disregard clear commands and unambiguous terms. Unlike *Verkuilen* and *Galvan,* this court finds nothing confusing about the unqualified term "written request." A more likely cause of confusion, at least for an average plan participant, is trying to grasp how a written discovery request is not really a "written request," or why an ERISA fiduciary should get a free pass from its normal disclosure duties once suit is filed.

Houston Poly Bag also objects to the statutory penalty on an additional ground not mentioned in either *Verkuilen* or *Galvan*—the "multiple hats" doctrine. It is true that an ERISA fiduciary may wear different hats. "For example a fiduciary may wear the hat of an employer and fire a beneficiary, for reasons not related to the ERISA plan, or the hat of a plan sponsor and modify the terms of a plan to be less generous to the beneficiary." *In re Enron Corp. Sec. Derivative & ERISA Litig.,* 284 F.Supp.2d 511, 550 (S.D.Tex. 2003). Houston Poly Bag contends that it "was not wearing its fiduciary hat when it was suing and being sued by Kujanek in the state court case." [59]

But this is not a breach of fiduciary duty claim. ERISA § 104(b)(4) imposes a statutory duty upon the "administrator" to respond to the "written request of any participant or beneficiary." While many tasks of a plan administrator are fiduciary in nature, not all are. *See Pegram v. Herdrich,* 530 U.S. 211, 225–226, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000) (mixed eligibility and medical treatment decisions). Whether a routine function like responding to a request for plan documents involves the exercise of discretionary authority sufficient to don the "fiduciary" hat is irrelevant to this statutory obligation. Responding to written inquiries for plan documents is a legal duty of the plan administrator. Houston Poly Bag is the plan administrator. When it receives a written request from a participant, it cannot escape its statutory duty by pretending that the request has nothing to do with plan administration. Nothing in the statute says that a participant's written request can be ignored unless it is addressed to the administrator *"qua* administrator." The fiduciary multiple hat doctrine is simply inapplicable here; to hold otherwise would enthrone form over substance.

*Amount of statutory penalty.* For these reasons, Kujanek is entitled to statutory penalties for Houston Poly Bag's violation of ERISA § 104(b)(4). As noted, the district court has discretion in awarding such penalties. *Fisher v. Metropolitan Life Ins. Co.,* 895 F.2d 1073, 1077 (5th Cir.1990). Among the factors the court may consider is the administrator's reason for refusing to provide the information. *Abraham,* 85 F.3d at 1132. The only reason offered by the defendant for refusing the request is lack of relevance to the state court case; this of course is no excuse under ERISA.[60] Apparently, no thought or attention was paid to defendant's disclosure obligations under ERISA. Given Houston Poly Bag's breach of fiduciary duty in connection with Kujanek's request for rollover forms, there is no basis to infer good faith in its lack of timely response to his plan document requests.

The penalty amount is keyed to the duration of the violation, starting 30 days

---

**59.** Dkt. 65, at 11.

**60.** There is no evidence that the plan administrator was aware of and relied upon court decisions from other jurisdictions, such as *Verkuilen* and *Galvan.*

after the request. In this case, the response date to Kujanek's request for all documents describing profit sharing contribution and eligibility requirements was May 28, 2008, so the violation commenced on that date. At a minimum, a full response would have consisted of the three legal documents comprising the profit sharing plan: the Defined Contribution Prototype Plan and Trust, the Adoption Agreement, and the Summary Plan Description.[61] Kujanek did not receive a full set of plan documents until February 26, 2009, a total unlawful delay of 274 days.

However, Kujanek did receive a partial response to his request on November 25, 2008, when Sumner forwarded a couple of pages of the Adoption Agreement which described the year end employment eligibility requirement.[62] At that point Houston Poly Bag was in partial compliance with ERISA § 104(b)(4), so it is appropriate to impose only a partial penalty for the last three months (93 days) of the violation.

Accordingly, the court recommends that Kujanek be awarded the full statutory penalty of $110/day for the period May 28 through November 25, 2008 ($110 × 181 days), and a reduced penalty of $55/day for the period November 26, 2008 through February 26, 2009 ($55 × 93 days), for a combined total penalty of $ 25,025.

### 4. Claims Against PBA

As the foregoing discussion makes clear, neither PBA nor any of its agents played any part in the withholding of rollover forms or the failure to furnish plan documents upon request. Even though PBA did not move for summary judgment, the material facts are undisputed, and so PBA is entitled to judgment as a matter of law in its favor.

### 5. Costs and Attorneys' Fees

■ The court has discretion to award attorneys' fees to either party under 29 U.S.C. § 1132(g)(1). *Hardt v. Reliance Standard Life Ins.,* — U.S. ——, 130 S.Ct. 2149, 2152, 176 L.Ed.2d 998 (2010). Kujanek has achieved more than the minimum "some degree of success on the merits" required to support an award of attorneys' fees. *Id.* at 2158. In exercising its discretion to award fees, the court further considers the five factors set forth in *Wegner v. Standard Ins. Co.,* 129 F.3d 814, 821 (5th Cir.1997):

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing party would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. No one of these factors in necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address in applying section 502(g).

In this case, all but the fourth consideration weigh in favor of a fee award; the fifth factor ("relative merits") mostly favors Kujanek, although one claim should

---

**61.** Dkt. 52, at 3.

**62.** Plaintiff's ex. C (Dkt. 39–4). Of course, statements contained in one plan document may well be contradicted or modified by other plan documents, so a participant need not

be satisfied with only a partial production. *See, e.g., Hansen v. Continental Ins. Co.,* 940 F.2d 971, 982 (5th Cir.1991) (SPD prevails over plan in case of conflict).

be denied. Houston Poly Bag's culpability is substantial, having breached both its fiduciary duty and statutory disclosure obligations. Its misleading and false statements to the court are indicative of bad faith. Its policies and practices display a troubling indifference to the federally protected rights of retirement plan participants, which an award of attorneys' fees might serve to deter. For these reasons, the court recommends that Kujanek's motion for attorneys' fees and costs (Dkt. 63) be granted in part and denied in part as follows.[63]

Kujanek has presented evidence that counsel spent 333.50 hours working on this case between November 2008 and May 31, 2010 at the rate of $200.00 per hour. The court finds that these amounts are reasonable. However, due to the lack of success on the 2007 allocation claim, a 10% reduction is appropriate. The court thus recommends an award of attorneys' fees in the amount of $ 60,030 ($66,700 less $6,670). In the event of appeal, Kujanek can seek a further award if warranted.

Kujanek also seeks costs and expenses in the amount of $13,302.94. Included in this request is the expert witness fee of Jim Oliver. Non-court appointed expert witness fees cannot be taxed as costs absent specific statutory authority. *Tyler v. Union Oil Co. of California,* 304 F.3d 379, 404 (5th Cir.2002). Section 1132(g)(1) contains no provision for recovery of expert fees. *See Cook Children's Med. Ctr. v. New England PPO Plan of Gen. Consol. Management, Inc.,* 491 F.3d 266, 274 (5th Cir.2007). Kujanek has presented invoices from Oliver in the amount of $10,260. Therefore, the court recommends that Kujanek be awarded costs and expenses in the amount of $3,042.94.

### Conclusion, Recommendation, and Order

For these reasons, the court recommends that Kujanek's motion for summary judgment be denied as to his claim for a 2007 profit sharing allocation, which should be dismissed, but granted as to his breach of fiduciary duty and statutory penalty claims against Houston Poly Bag. All claims against defendant PBA should be denied.

The parties have 14 days from service of this Amended Memorandum and Recommendation to file written objections. Failure to file timely objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See* FED. R. CIV. P. 72.

---

63. Houston Poly Bag did not file a timely response to the motion for attorneys' fees, so the motion is deemed unopposed by Loc. R. S.D. TEX. 7.3, 7.4. The court will not consider the late-filed response (Dkt. 67), which is stricken.